UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOHN G. BRANCA, etc., et al., | No. CV 09-7084-DMG (PLAx) |
| Plaintiffs, | ORDER RE: MOTION FOR REASONABLE COMPENSATION UNDER FED.R.CIV.P. 45 |
| v. | |
| HEAL THE WORLD FOUNDATION, et al., | |
| Defendants. | |

On April 21, 2011, third party Brian Oxman filed a Motion seeking compensation in connection with his compliance with two subpoenas issued to him by plaintiffs in this action. The Motion was referred to this Court by the District Judge on May 31, 2011. The Court has concluded that oral argument will not be of material assistance in determining the Motion. See Local Rule 7-15.

According to Mr. Oxman, he acted as counsel for members of the Michael Jackson family for 25 years, and during that time amassed "possibly millions of documents" that fill hundreds of storage boxes. On December 29, 2010, plaintiffs issued two subpoenas to him, one for records with a January 21, 2011, production date, the other for his deposition with additional documents,

set for January 27, 2011.[1] The subpoenas sought 21 categories of documents, and Mr. Oxman represents that he was required to "look through all of the Jackson Family's documents from the past two and a half decades" to comply. He enlisted his partner, Maureen Jaroscak, for assistance, and together they looked through hundreds of boxes, examined computers for information, and looked through hundreds of old computer disks. The search "involved millions of documents, hundreds of computer files, and hundreds of computer disks, along with old computers which were no longer compatible with current equipment." This, he contends, amounted to an undue burden on him, as he had previously delivered all documents concerning Michael Jackson to Mr. Jackson's attorneys before his death, and had kept only copies for his records.

On January 17, 2011, Mr. Oxman sent plaintiffs a response to the subpoenas, in which he objected that he could not respond by the set date and was unavailable for his deposition as scheduled. He further objected that responding to the subpoenas would be burdensome and oppressive, as he had already turned over the subject documents, and it would require an extensive efforts to review his files, determine privilege issues, and search through the records. He sought compensation of $500 per hour to perform the search, plus costs.[2] On February 11, 2011, Mr. Oxman appeared for his rescheduled deposition (which consumed more than seven hours, including travel time), and produced more than 1,261 documents (which required 14.2 hours to collect). Although his hourly rate is $500, he requested compensation at half of that rate, as well as copying and postage costs of $318.80, for a total of $3,868.80. He also sought $94.48 for the witness fee check that was returned by the bank.[3] In addition, Mr. Oxman spent 8.9 hours to file this Motion, and 5.3 hours to prepare his Reply Brief, and thus seeks an additional $7,100

---

[1] A witness fee check of $76 accompanied the subpoenas. The check was returned from the bank as non-sufficient funds.

[2] As set forth below, plaintiffs' counsel later asserted she did not receive the response on or near January 17, 2011, and then, when received on January 27, 2011, stated that it was improper and demanded compliance without payment of compensation.

[3] Mr. Oxman confirms that he received a money order for $94.48 on April 27, 2011. Supplemental Declaration of Brian Oxman, ¶ 4.

(14.2 hours at $500 per hour). See Declaration of Brian Oxman in support of Motion; Supplemental Declaration of Brian Oxman, ¶ 16.

In response, plaintiffs argue, among other things, that Mr. Oxman evaded service of the subject subpoenas for weeks; did not timely serve proper objections to the subpoenas (counsel disputes Mr. Oxman's assertions that his January 17, 2011, letter purportedly objecting to producing documents and indicating a problem with the deposition date was sent when dated, and advises that State Bar disciplinary records show that Mr. Oxman has a habit of using postal service deficiencies to excuse his conduct); refused to appear for his deposition until threatened with an ex parte application to compel his attendance; and failed to respond to plaintiffs' request for a tax form in connection with reimbursement for copying expenses. Further, Mr. Oxman has shown an interest in the litigation that undercuts his claim to be a disinterested third party (plaintiffs contend that Mr. Oxman's September 2010 letter gave rise to defendants' new defense), and the amount of work he did in response to the subpoenas was minimal. Finally, counsel for plaintiffs describes Mr. Oxman's behavior and comments in connection with the subpoenas in very unflattering terms; represents that Mr. Oxman did not "bind" any documents together other than with rubberbands, as he claims; and advises that he produced only a few categories of documents. Plaintiffs' counsel offered to pay Mr. Oxman's copying fees, and requested the manner in which Mr. Oxman would like to be paid. She also requested a W-9 form so that payment could be made. No response was provided. See Declaration of Nina A. Boyajian in Support of Plaintiffs' Opposition.

Plaintiffs submit that Mr. Oxman's failure to file a motion to quash the subpoena, or a motion for a protective order, and the fact that there was no court order requiring compliance, requires a conclusion that his claim to fees or expenses has been waived. They further urge that Mr. Oxman's representation that he served objections in a timely fashion be rejected as unbelievable.

Rule 45 of the Federal Rules of Civil Procedure controls subpoenas served on non-parties to an action. Among other things, it requires that fees and mileage be tendered when the subpoena requires the person's attendance. Rule 45(b)(1). Here, only one of the two subpoenas

required Mr. Oxman's attendance. Thus, only one fee was required, and it has now been received. Next, the Rule also requires that the attorney issuing the subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(c)(1). A person commanded to produce documents may serve on the requesting party a written objection to copying before the earlier of the time specified for compliance or 14 days after service. If objection is made, then the serving party may move for an order compelling production. Rule 45(c)(2)(B).

Reimbursement of costs to a non-party required to produce documents in response to a Rule 45 subpoena is appropriate in certain circumstances. In United States v. Columbia Broadcasting System, Inc., 666 F.2d 364 (9th Cir.), cert. denied, 457 U.S. 1118 (1982), five nonparty witnesses were subpoenaed to produce "massive quantities of documents." The district judge denied their post-production motion for reimbursement of their substantial discovery costs. The Court of Appeals determined that the district court had the authority to grant post-compliance reimbursement of costs in the circumstances presented there, since the requesting parties were on notice that the nonparties intended to seek reimbursement and could thus have modified their requests if they believed their exposure to potential reimbursement exceeded the value of the materials being sought.[4] Ultimately, however, the Columbia Broadcasting System court determined that the record was inadequate to determine what amount of compensation would be reasonable, and remanded to the district court to apply factors such as: the scope of discovery, the invasiveness of the request, the extent to which the producing party must separate responsive information from privileged or irrelevant materials, and the reasonableness of the costs. The court noted that "[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they

---

[4] The nonparties in Columbia Broadcasting System had filed a motion to quash the subpoenas, in which they specifically requested that the requesting parties pay discovery costs. The court ordered production without addressing costs, and the nonparties began the task of producing the documents. During the eighteen months it took to complete the production, the nonparties kept the court informed of their progress and the costs they were incurring. They ultimately filed a motion seeking reimbursement for some or all of the $2.3 million in costs. The district judge denied that request without providing any findings of fact or conclusions of law.

are not a party," and emphasized that "a witness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or the producing party." Id., at 371-72.

This Court, guided by the reasoning in Columbia Broadcasting System, finds that some compensation is appropriate here. Even if plaintiffs did not receive Mr. Oxman's Response to Subpoenas on January 17, 2011, in which he objected to production and sought payment of his expenses to perform the search ($5,000 in advance for the first 10 hours of search time, and then $500 per hour until completion), plaintiffs were aware as of January 27, 2011, i.e., **prior** to the February 11 production, that Mr. Oxman would be seeking reimbursement for producing the documents. Nevertheless, the subpoenas were not modified to reduce the scope of what was being requested. The documents sought by plaintiffs, concerning Mr. Oxman's dealings with Melissa Johnson and her Heal the World Foundation, involved, by plaintiffs' own account (Plaintiffs' Opposition, at 22) approximately ten years of time as to Ms. Johnson, and approximately 20 years as to Heal the World. If the responsive documents were neatly organized in boxes marked with dates, names and subject matter, the search may have been significantly simpler to perform. There is no indication that they were so organized, however. Even if the number of responsive documents was relatively small, they still had to be separated from 25 years of non-responsive documents. This takes time. Mr. Oxman's explanation for being able to search such a vast number of documents in only 14.2 hours -- that documents were searched for electronically with search terms -- is not incredible. And even if Mr. Oxman somehow injected himself into this litigation, the Court sees no reason that Mr. Oxman, a nonparty, should in these circumstances have to shoulder all of the costs for producing the documents.[5] Neither do plaintiffs contend that Mr. Oxman can more readily bear the costs of production than plaintiffs.

Having reviewed the 21 document requests, and accepting Mr. Oxman's representations that he possesses large quantities of documents and computer files that could contain responsive

---

[5] The Court notes that in the approximately four months since Mr. Oxman produced documents, plaintiffs did not move this Court to compel additional documents or object that the production was nonresponsive or incomplete. Thus, the Court presumes that the production was responsive to the subpoenas.

information, the Court finds that the number of hours spent -- the accuracy of which he swore to under penalty of perjury -- is reasonable. See <u>Linder v. Calero-Portocarrero</u>, 183 F.R.D. 314, 322 (D.D.C. 1998) ("Rule 45's mandatory cost-shifting provisions promote the most efficient use of resources in the discovery process."). However, the hourly rate sought by Mr. Oxman for the simple yet tedious task of sifting through documents is excessive.

Accordingly, Brian Oxman's Motion for Reasonable Compensation (Docket No. 167) is **granted in part**. The Court orders that plaintiffs, **no later than June 24, 2011**, reimburse Mr. Oxman in the amount of $1,775 (14.2 hours at the rate of $125 per hour), plus copying costs of $190.65, for a **total of $1,965.65**. The Court does not award Mr. Oxman any amount for the preparation of the Motion or Reply, as it finds that his and plaintiffs' inability to effectively communicate concerning this issue, and the lack of civility that is on full display in the Motion, led to its filing.

DATED: June 10, 2011

　　　　　　　　　　　　　　　　　　／s／ Paul L. Abrams
　　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE